**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1865-17T4

S.R.,

     Plaintiff-Respondent,

v.

F.R.,

     Defendant-Appellant.

_____

Submitted January 17, 2019 – Decided July 11, 2019

Before Judges O'Connor and Whipple.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-1745-14.

Einhorn, Harris, Ascher, Barbarito & Frost, PC, attorneys for appellant (Mark Wechsler, of counsel and on the briefs).

S.R., respondent pro se.

PER CURIAM

In this post-divorce action, defendant F.R. appeals from a November 14, 2017 Family Part order, which granted certain relief plaintiff S.R. sought in a post-judgment motion and denied most of the relief defendant sought in a corresponding cross motion. We affirm in part, reverse in part, and remand for further proceedings.

I

We highlight the salient facts. The parties were married in 1991. During the marriage the parties had three children. Plaintiff was the primary caretaker and defendant the primary wage earner, whose income supported the family. On February 27, 2015, a final judgment of divorce (judgment) was entered after default was entered against defendant and a default hearing held. By the time of the divorce, one of the three children was emancipated.

Relevant to the issues on appeal, the judgment designated plaintiff the primary caretaker of the parties' two unemancipated children. After imputing an annual income of $24,960 to plaintiff and finding defendant earned $171,440 per year, the court ordered defendant to pay $376 per week to plaintiff in child support for the younger daughter, pursuant to the Child Support Guidelines (CSG), see Child Support Guidelines, Pressler & Verniero, Current N.J. Court

Rules, Appendices IX-A to -G to R. 5:6A, www.gannlaw.com (2019), who was still living at home.

The court did not order defendant to pay plaintiff child support for the older daughter because she lived at the college she attended. However, the court ordered that defendant pay eighty-four and plaintiff sixteen percent of the older daughter's college expenses until she obtained her degree. The court's decision on the allocation of college expenses reflected the parties' percentage share of income at that time, as reflected on the court's CSG worksheet. The judgment also ordered defendant to pay alimony "in an amount to be determined by the [c]ourt," and further provided that after the amount of alimony plaintiff was to receive was determined, defendant's obligation to pay child support would be recalculated, as would the parties' percentage share of paying for the older daughter's college education.

A provision in the judgment notes the parties owned two cars at the time of the divorce and that each party took possession of one car; however, the car defendant took was more valuable than plaintiff's. Another provision noted that, in 2014, plaintiff liquidated an IRA in order to pay household expenses. At the time of liquidation, the IRA had a cash value of $22,000. The judgment stated defendant's fifty percent interest in the IRA "shall be deemed satisfied as a credit

A-1865-17T4

owed to the plaintiff for the disparity in the value of the vehicles . . . . [T]he remainder of the [d]efendant's 50% share of the IRA shall be applied towards his share of household expenses paid by the [p]laintiff."

On April 22, 2015, an amended final judgment of divorce (amended judgment) was entered, which ordered defendant to pay $1155 per week in alimony to plaintiff, effective October 24, 2014, as well as $100 per week toward alimony arrears. The amended judgment stated defendant's child support obligation had been recalculated based upon the fact he was ordered to pay alimony to plaintiff, and that defendant was ordered to pay plaintiff $240 per week in child support for the younger daughter in accordance with the CSG, retroactive to October 24, 2014. The CSG worksheet the court utilized to determine defendant's new child support obligation was not in the record. The amended judgment makes no mention of whether the parties' obligation to pay the older daughter's college expenses changed after the court ordered defendant to pay alimony to plaintiff.

In a written opinion accompanying the amended judgment, the trial court stated it imputed to plaintiff, a teacher's assistant, an annual salary of $24,960. Although the court acknowledged the New Jersey Department of Labor's Occupational Employment Statistics states that a full-time teacher's assistant

earns on average $26,300 per year, the court, without explanation, chose to impute an annual income of $24,960 per year to plaintiff instead.

As for his ability to earn income, the court noted defendant was a freelance cameraman and a member of the International Alliance of Theatrical Stage Employees Labor Union. The court also found that, in the past, defendant earned income from renting out his equipment. Although his gross income in 2013 and 2014 was not known, defendant earned $170,546 and $171,440 in 2011 and 2012, respectively, from working as a cameraman, renting equipment, and obtaining unemployment benefits. Because defendant's income from 2013 and 2014 was unknown, the court used his 2012 annual gross income to calculate alimony and child support.

In July 2016, defendant successfully moved to reduce the amount of alimony he was obligated to pay plaintiff. In an order dated July 8, 2016, the trial court reduced defendant's alimony obligation from $1155 per week to $750 per week, although his obligation to pay $100 per week toward alimony arrears continued. Defendant's child support obligation for the younger daughter, calculated pursuant to the CSG, increased from $240 to $288 per week.

In a written decision accompanying the July 8, 2016 order, the court acknowledged defendant's claim there had been a reduction in his income due

A-1865-17T4

to changes within his profession. The court also noted defendant produced proof of his annual income from 2011 to 2015, which revealed his annual income over this five-year period decreased from $171,440 to $91,970. However, the court did not accept defendant's claim that

> he is unable to earn more than $100,000.00 [per year] because of the current state of his industry . . . . [T]he [d]efendant's long-term employment as a camera-operator supports a conclusion that the [d]efendant can control the nature and extent of his employment opportunities and earn an annual income in excess of $100,000.00 and closer to his average income.

For purposes of calculating alimony and child support, the court imputed to defendant an annual income of $133,955.80, the average annual income defendant earned from 2011 to 2015. Defendant did not appeal the July 8, 2016 order.

In August 2017, plaintiff filed a motion to enforce litigant's rights, claiming defendant's alimony and child support arrears had climbed to $118,817.07, and that defendant owed plaintiff $3,133.76 toward the older daughter's college expenses. Plaintiff requested that defendant dip into a retirement fund he received in equitable distribution to pay off the arrears.

Defendant filed a cross motion in response to plaintiff's motion. Pertinent to the issues on appeal, defendant's principal arguments before the trial court

6

were: (1) plaintiff's motion was deficient because she failed to attach a Case Information Statement (CIS), warranting the dismissal of her motion; (2) a change in his circumstances warranted a reduction in his alimony and child support obligations; (3) defendant's support obligations should be calculated based upon his income in 2017; (4) plaintiff was underemployed, warranting the imputation of additional income; (5) his contribution toward the older daughter's college expenses were improperly fixed at eighty-four and not fifty-three percent; (6) he was entitled to a credit of $3,128.97 in his arrears, because plaintiff's liquidation of the IRA in 2014 resulted in taxes he was compelled to pay to the IRS; and (7) he is not responsible for paying the younger daughter's college or post-secondary educational expenses.

In his certification in support of his cross motion, defendant argued, as he had when he sought a reduction in his support obligations in July 2016, that certain changes within his field affected his ability to earn as much income as he had in the past. He further certified he actively searched for work, and attached a "daily diary" in which he noted the efforts he made on various dates from January 2017 through September 2017. Defendant's tax return for 2016 revealed his gross income that year was $71,447. According to his CIS, as of

7

A-1865-17T4

October 3, 2017, he realized only $18,950 in earned income and $11,180 in unemployment benefits since the beginning of 2017.

Defendant also claimed that, immediately before leaving the marital home, his mental health deteriorated, for which he began to receive treatment in June 2016. He stated he was diagnosed with and medicated for post-traumatic stress disorder, major depressive disorder, and severe generalized anxiety disorder. Defendant attached a report from his treating psychiatrist, who stated defendant's mental health condition negatively affects "all aspects of his daily functioning," and has "undermined his ability to find and maintain steady employment, despite him exhausting all efforts to obtain work." A report from his psychotherapist expressed essentially the same opinion.

The trial court rejected defendant's argument that he had experienced a change in circumstance warranting a reduction in his alimony and child support obligations. In the court's written statement of reasons, it found that "[d]efendant can control the nature and extent of his employment opportunities and earn an annual income in excess of $100,000 and closer to his average income of $135,000 as determined in the prior Order" of July 8, 2016. The court further noted defendant failed to "provide proof of any efforts to seek additional or other employment." With respect to defendant's mental health, the court

8

determined defendant failed to demonstrate an inability to work because "the medical information does not establish that [d]efendant has been deemed disabled."

In its cross motion, defendant also contended plaintiff was underemployed, and requested the court impute to her the $26,300 the New Jersey Occupational Employment Statistics states is the average annual salary for a teacher's assistant, instead of the $24,960 per year the court imputed to plaintiff when the amended judgment was entered. The trial court denied defendant's request because her "income was already imputed at $24,960.00 a year."

Defendant requested that his percentage share of the older daughter's college expenses be reduced from eighty-four to fifty-three percent, retroactive to the day the judgment was entered. In his certification in support of his cross motion, defendant pointed out that although the judgment states he was responsible for eighty-four percent of the older daughter's college expenses, the judgment further states that the "parties' respective responsibility for [the older daughter's] college expenses is subject to adjustment pending the recalculation of child support following the [c]ourt's determination of the [d]efendant's alimony obligation." Thereafter, the amended judgment noted defendant's child

support obligation was recalculated based upon the award of alimony to plaintiff; however, the amended judgment failed to include each party's percentage share toward child support.

In the November 14, 2017 order, the trial court granted defendant's request to establish his pro rata share of the older daughter's college expenses at fifty-three percent, but the court also ordered that defendant was responsible for eighty-four percent of the older daughter's college expenses for the 2015-2016 academic year "pursuant to the order dated April 22, 2016." The April 22, 2016 order states defendant shall be responsible for eighty-four percent of the older daughter's college expenses for the 2015-2016 academic year.

Defendant did seek reconsideration of the April 22, 2016 order, which resulted in the July 8, 2016 order but, as reflected in the latter order, the provision in the April 22, 2016 order directing defendant pay eighty-four percent of the older daughter's college expenses for the 2015-2016 academic year was not modified. On this issue, the written decision attached to the November 14, 2017 order states:

> In accordance with the order dated October 26, 2017, which corrected the child support guidelines issued with the amended final judgment of divorce dated April 22, 2015, the defendant shall be responsible for 56% of [the older daughter's] college expenses for the 2016-2017 academic year[.]

A copy of the October 26, 2017 order was not provided in the record, but it is clear that after the amended judgment was entered, the court subsequently ordered defendant to pay more than fifty-three percent of the older daughter's college expenses.

In his cross motion, defendant requested any arrears he owed be credited in the amount of $3,128.97. He claimed plaintiff failed to inform him that she had liquidated the IRA in 2014. Unaware of the liquidation, defendant failed to pay taxes on such funds. In 2017, the IRS contacted him and advised he owed $12,460.56 in unpaid taxes penalties. Defendant paid over $9000 to the IRS and, when he filed his cross motion, owed an additional $3,128.97. In his cross motion he did not request plaintiff pay half of what he paid to the IRS, just that she pay the remaining $3,128.97 in taxes and penalties owed to the IRS. The trial court denied defendant's request. The court merely stated:

> The defendant's interest in the IRA was addressed in the final judgment of divorce. The defendant's share was of the IRA was applied to the disparity in the value of their vehicles and the remainder towards his share of household expenses paid by plaintiff with the funds.

In his cross motion, defendant sought a ruling that he was not responsible for any of the younger daughter's college or post-secondary educational expenses. At the time of his application, the younger daughter was a junior in

11

high school. Defendant argued he should be excused from contributing to such expenses because the younger daughter refused to have a relationship with him. The court denied this request on the ground it was premature. The court stated the determination of defendant's contribution toward college expenses "should abide the event in accordance with existing case law and statutes."

Finally, defendant requested plaintiff's motion to enforce litigant's rights be denied because, among other things, plaintiff failed to append to her motion an updated CIS. Defendant contended such omission mandated the dismissal of her motion pursuant to Rule 5:5-2(a). The court determined a CIS was not required given the kind of relief plaintiff sought in her application.

II

On appeal, defendant asserts the following arguments for our consideration.

> POINT I: DEFENDANT-APPELLANT HAS ESTABLISHED A PRIMA FACIE SHOWING OF CHANGED CIRCUMSTANCES WARRANTING A MODIFICATION OF HIS SUPPORT OBLIGATION.
>
> POINT II: DEFENDANT-APPELLANT HAS MADE A SHOWING SUFFICIENT TO WARRANT A SUSPENSION OF HIS ALIMONY OBLIGATION AND DISCOVERY FOLLOWED BY A PLENARY HEARING.

<u>POINT III</u>: THIS MATTER SHOULD BE REMANDED
TO A DIFFERENT JUDGE.

A.     The court's refusal to correct an obvious error in regard to the ratio of contribution for college expenses is error and should be reversed.  Additionally, the court committed error in that it has never conducted any analysis of the factors set forth in <u>Newburgh v. Arrigo</u>, [88 N.J. 529, 545 (1982)] particularly the ability of the parties to pay.

B.     The court's consideration of plaintiff-respondent's motion in the absence of the filing of a case information statement was improper.

C.     The court's consideration and granting of plaintiff-respondent's request for a lump sum payment to be made from defendant-appellant's retirement asset which had already been distributed in the divorce was error and inequitable.

D.     The court's disregard of defendant-appellant's substantial proofs respecting his income coupled with the court's reference to defendant-appellant operating a business, having a girlfriend, and having a place to live is unsupported by the record and goes against the weight of the evidence.

E.     The court failed to make any findings respecting defendant-appellant's mental health vis-à-vis his ability to obtain/maintain employment.

F.     The court's justification for plaintiff-respondent having forged defendant-appellant's signature in order to liquidate his IRA and its failure to address the resulting tax and penalty consequences that have fallen upon defendant-appellant is inequitable.

13

G. The court's proactive pursuit of facts and documents by way of letter was improper.

Family Part rulings on applications to modify child support and alimony are entitled to our deference on appeal absent a clear abuse of discretion. Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012); J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012). An abuse of discretion "arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Jacoby, 427 N.J. Super. at 116 (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). The findings of the Family Part judge should not be disturbed unless they are wholly unsupported as to lead to a denial of justice. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). Such findings "are considered binding on appeal when supported by adequate, substantial and credible evidence." Id. at 484.

Alimony and child support may be modified by a court upon a showing of "changed circumstances." Lepis v. Lepis, 83 N.J. 139, 146 (1980). It is within the sound discretion of a Family Part judge to determine whether to modify an alimony or child support obligation based upon such a showing. Innes v. Innes, 117 N.J. 496, 504 (1990); Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006). The party seeking modification has the burden of showing changed

14

circumstances.  Lepis, 83 N.J. at 157.  Each motion to modify "rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters."  Larbig, 384 N.J. Super. at 21 (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)).

We turn to the arguments defendant asserts on appeal.  He contends the court erred when it failed to deny plaintiff's motion.  Defendant argues that, pursuant to Rule 5:5-2(a), plaintiff was required to attach a CIS to her motion and that the remedy for such omission was the denial of such motion.  We disagree.  Rule 5:5-2(a) provides in pertinent part:

> The case information statement required by this rule shall be filed and served in all contested family actions, except summary actions, in which there is any issue as to custody, support, alimony or equitable distribution. With respect to summary actions, R. 5:5-3 shall apply. In all other family actions, a case information statement may be required by order on motion of the court or a party.

When plaintiff filed her motion, there was no contested family action pending.  All matters pertaining to custody, support, alimony or equitable distribution had been decided either in the judgment, amended judgment, or post-judgment motions and were no longer contested.  Plaintiff's motion was merely to enforce some of the provisions in the latter judgments and orders.

Therefore, the court was not required to deny her motion because she failed to submit a CIS.

Defendant argues the trial court erred when it denied his request to order plaintiff to contribute toward the tax liability incurred as a result of the liquidation of the IRA. The IRA was a joint asset the trial court equitably distributed in the judgment. Defendant does not challenge such distribution; he merely seeks to have plaintiff contribute toward the tax liability the IRS imposed upon him – well after the entry of both judgments – as a result of that liquidation. Without providing any explanation, the trial court denied defendant's request.

A trial court in a divorce matter has the authority to allocate marital assets and debt between a husband and wife. See Ionno v. Ionno, 148 N.J. Super. 259, 262 (App. Div. 1977). When dividing marital assets, the court must generally "take into account the liabilities as well as the assets of the parties. In other words, if the assets are to be divided between the parties, the debts incurred in obtaining those assets should likewise be allocated between the parties." Monte v. Monte, 212 N.J. Super. 557, 567 (App. Div. 1986) (citation omitted). Here, because it did not allocate this debt, we remand this matter to the trial court so that it may address and allocate this particular liability between the parties.

A-1865-17T4

Defendant maintains the court erred when it ordered him to use a portion of a retirement asset acquired through equitable distribution to satisfy alimony arrears. He contends the following language in N.J.S.A. 2A:34-23(b) supports his argument: "[w]hen a share of a retirement benefit is treated as an asset for purposes of equitable distribution, the court shall not consider income generated thereafter by that share for purposes of determining alimony."

Based upon the record before us, it appears this argument was not raised before the trial court and, "[g]enerally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012). Even if this issue had been raised, the trial court did not address this question in its opinion and, thus, we decline to do so in the first instance. See Duddy v. Gov't Emps. Ins. Co., 421 N.J. Super. 214, 221 (App. Div. 2011).

Defendant complains the trial court did not consider the factors in Newburgh, 88 N.J. at 545 (1982), before it determined how to allocate the cost of the older daughter's college education between the parties. However, when before the trial court, defendant had no objection to allocating the costs of the older daughter's college education between the parties on a percentage basis, as long as his share of those expenses was limited to fifty-three percent. He did

not object to the fact the court did not make a determination of the parties' obligation after considering the twelve factors in <u>Newburgh</u>. Because the latter issue was not raised before the trial court, we decline to consider it, as well. <u>See</u> <u>Galicia</u>, 210 N.J. at 383.

Defendant contends the court erred when it imputed to plaintiff an annual income of $24,960, rather than the income the New Jersey Occupational Employment Statistics states is the average annual salary of a teacher's assistant working full-time. We agree. On remand, the amount of child support defendant is to pay pursuant to the CSG shall be recalculated, and plaintiff's earned income shall be that which the Occupational Employment Statistics states is the average annual salary of a full-time teacher's assistant.

We have carefully considered defendant's remaining arguments and determine they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION